(No. 12662.—Decree affirmed.)

N. MIEDEMA et al. Defendants in Error, vs. H. D. WORM-
HOUDT et al. Plaintiffs in Error.

*Opinion filed June 18, 1919.*

1. SPECIFIC PERFORMANCE—*right to specific performance rests
in discretion of court, subject to principles of equity.* The right to
a specific performance of a contract is not absolute but rests in the
discretion of the court, subject to the settled principles of equity.

2. SAME—*contract to convey may be enforced although incon-
venient to grantors.* The object of courts of equity, as well as
courts of law, is the enforcement of contracts rather than their
evasion, and where a contract for the sale of land is fairly and un-
derstandingly entered into, a court of equity will enforce the con-
tract although its performance may require the grantors to pur-
chase from a third party before they are ready to do so.

3. SAME—*performance may be enforced where beneficial owner
contracts to convey.* In equity the vendor of land contracted to be
sold is regarded as a trustee for the vendee, who is regarded as the
equitable owner, and where the purchaser disposes of his interest
in the land, either by an assignment of the contract for a deed
or by the execution of a new contract to convey to a third party,
a court of chancery will decree specific performance of the con-
tract by the beneficial owner or the one who holds the title for
his benefit.

WRIT OF ERROR to the Superior Court of Cook county;
the Hon. CHARLES M. FOELL, Judge, presiding.

FRED B. SILSBEE, for plaintiffs in error.

JOHN A. MCKEOWN, for defendants in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the
court:

On August 26, 1916, plaintiffs in error, H. D. Worm-
houdt and A. J. Kuyper, entered into a contract with E. R.
Tallmadge for the exchange of about 2073 acres of land
which Tallmadge owned in Kankakee county for 2720 acres
which the plaintiffs in error owned in Manitoba, Canada.

In consideration of the conveyance to them of the lands in Kankakee county the plaintiffs in error agreed to convey to Tallmadge the Canada lands and to pay in addition the sum of $200,000,—$20,000 on or before two years after the date of the agreement and the remainder in installments thereafter. Tallmadge agreed, as soon as the payment of $20,000 had been made, to convey the Kankakee county lands to the plaintiffs in error and accept notes and trust deeds from them for the unpaid balance of the purchase money. It was provided that as the plaintiffs in error desired to sell and colonize the lands in Kankakee county and might desire to have portions thereof conveyed by Tallmadge, under the contract, before the payment of the $20,000 and might after the execution of the trust deed desire to have portions of the lands released from the lien thereof, for the purpose of such conveyance and release the lands might be divided into seven parcels, and that on receiving in cash the amount per acre placed opposite the parcels, respectively, Tallmadge would convey any one of the parcels. All of the lands were situated in town 30, north, range 11, west, and the north half of the northeast quarter of section 10 was designated as "Parcel C," opposite which the amount per acre was $150. On October 5, 1916, the plaintiffs in error entered into a contract with the defendants in error whereby the plaintiffs in error agreed to convey to the defendants in error 40 acres of "Parcel C" for $7500, of which $25 was paid in cash, $475 was to be paid on December 1, 1916, and the remainder in installments falling due at later dates. This contract provided that a warranty deed should be delivered as soon as $3500 of the purchase price had been paid in cash and notes secured by a trust deed had been delivered to the vendors. On March 19, 1918, the defendants in error tendered to the plaintiffs in error the balance payable under the terms of the contract, except $4000, and offered to give a note secured by a trust deed for this sum and demanded that the

plaintiffs in error convey the premises to them. The plaintiffs in error refused to accept the money and the note and refused to execute a deed. Thereupon the defendants in error filed a bill in the superior court of Cook county to compel the specific performance of the contract by plaintiffs in error. Tallmadge was made a defendant to the bill and answered, admitting its allegations, stating that he was able and willing to comply with the terms of his contract with the plaintiffs in error and to convey to the plaintiffs in error the lands described in the bill, together with the other lands which the plaintiffs in error agreed to purchase from him by their contract. The cause was heard, the court entered a decree for the specific performance of the contract, and the plaintiffs in error have sued out a writ of error.

The objection of plaintiffs in error to the decree is, that the court, in decreeing specific performance, did not exercise a wise discretion, because the defendants did·not have title to the 40 acres of land in controversy and could not obtain title without purchasing the whole of "Parcel C," which consisted of 80 acres, and that under the circumstances the decree of specific performance produced hardship· and injustice to the defendants. The defendants in error did not pay the $475 which was due on December 1, 1916, but they paid $275 of that amount and are also entitled to a further credit of $60 on the contract. They took possession of the land on March 1, 1917, and have ever since been in possession of it, have improved and cultivated it, and the defendant in error N. Miedema has continuously resided on it.

It is not argued that the rights of the defendants in error were forfeited by reason of their failure to comply with the contract or that their tender of performance on March 19, 1918, was not sufficient. The defense is based wholly on two propositions: First, that the decree of specific performance does not subserve the ends of justice but produces

hardship and injustice to the defendants; second, that the defendants had no title to the land. It has been often said the right to a specific performance of a contract is not absolute but rests in the discretion of the court. This discretion, however, is controlled by settled principles of equity, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression or fraud appear. (*Anderson* v. *Anderson,* 251 Ill. 415; *Adams* v. *Larson,* 279 id. 268.) The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion. Ordinarily the specific performance of a contract to convey land is as much a matter of course as an action of damages for its breach. (*Cumberledge* v. *Brooks,* 235 Ill. 249.) The hardship of which the plaintiffs in error complain is, that in order to acquire the title to the 40 acres which they have agreed to convey to defendants in error for $187.50 an acre, they would have to complete the purchase of the 80 acres of which it is a part at $150 an acre when there was nothing due on their contract for five months. The plaintiffs in error contracted to convey this 40 acres of land whenever they were paid $3500, and the remaining $4000 was secured by a note and mortgage on the premises. They knew when they made the contract that they could only acquire the title to the 40 acres, so as to comply with their contract, by obtaining a deed for the whole 80 acres for $12,000. They sold the land to the defendants in error at a profit of $37.50 an acre, and there is no hardship or oppression in compelling them to do what they agreed to do when they thought it was for their advantage. They were competent to contract, they did fairly contract, and they ought not to be relieved from their agreement because it is not convenient to perform it.

As far as the objection that the plaintiffs in error did not have the title to the land is concerned, the doctrine of

equity is that the vendor of land contracted to be sold is regarded as a trustee for the vendee, who is regarded as the equitable owner of the land. The purchaser can dispose of his interest in the land either by an assignment of his contract for a deed or by the execution of a new contract to convey, and a court of chancery will decree a specific performance of the contract by the beneficial owner or the vendor who holds the title for his benefit. *Waggoner* v. *Saether,* 267 Ill. 32.

The decree is affirmed.

*Decree affirmed.* .