FIRST ILLINOIS NATIONAL BANK, Plaintiff-Appellee, v. ELMER L. HANS, Individually and as Ex'r of the Estate of Arletta L. Hans, Deceased, *et al.*, Defendants-Appellants.

Second District   No. 2—85—0455

Opinion filed June 3, 1986.

John F. Mitchell, of Mt. Carroll, for appellants.

John A. Leemon, of Mt. Carroll, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, First Illinois National Bank, filed a three-count complaint in the circuit court of Carroll County against Elmer Hans individually and as executor of the estate of Arletta Hans, Terry Hans, Evelyn Hans, Ronald Hans, Judith Hans, and other individuals, not parties to this appeal, seeking to recover under counts I and II possession of two parcels of land. Count III was a mortgage foreclosure action. The trial court found for plaintiff on all three counts. Defendants appeal from the court's findings with respect to counts I and II.

The facts are not in dispute. By way of background, Elmer Hans is the father of Ronald and Terry Hans. Ronald is married to Judith, and Terry is married to Evelyn. Arletta, who died in June 1982, was married to Elmer and was the mother of Ronald and Terry.

The record discloses that in January 1974 Elmer and Arletta entered into an installment contract for the purchase of a parcel of land owned by Donovan and Eleanor Johnson. Thereafter, in February 1976 Elmer, Terry, and Ronald executed an installment contract for the purchase of a tract of land owned by Norris and Shirley Hartman. In both instances the respective purchasers paid the appropriate down payment and took possession of the premises, and thus far they have continued to pay the monthly installments according to the terms set forth in the contracts.

On July 3, 1981, defendants borrowed $200,000 from plaintiff. As security for the loan, defendants executed an assignment of their in-

terest in the Hartman contract. In the event of a default, the assignment provided that the defendants would "execute to the assignee a Quit Claim Deed for the [Hartman property], which shall stand as a deed in lieu of foreclosure." Defendants borrowed an additional $100,000 from plaintiff on April 26, 1982. To secure this loan, defendants assigned their interest in the Johnson contract, authorizing plaintiff to take possession of the Johnson property upon the occurrence of a default in their loan payments.

Defendants defaulted on both loans, thereby giving rise to this action. Plaintiff did not specify in express terms the nature of its actions under the first two counts of its complaint. In count I plaintiff prayed for possession of the Johnson property, while in count II it sought an order requiring defendants to execute a quitclaim deed for the Hartman property. During closing arguments it became apparent that the parties disagreed over the nature of plaintiff's actions. Plaintiff insisted that counts I and II were forcible entry and detainer actions and that it was entitled to recover possession of both tracts of land then in possession of defendants. Defendants, arguing that the two assignments were equitable mortgages, contended that plaintiff's actions were in effect mortgage foreclosure actions and that they were entitled to redemptive rights in the event there was a foreclosure judgment. The trial court ruled in plaintiff's favor, finding that plaintiff was entitled to recover possession of both parcels of real estate and that it acquired all the rights, powers, and privileges as contract purchasers under the two installment contracts. With respect to the Hartman real estate, the court ordered defendants to execute and deliver a quitclaim deed to plaintiff. It was conceded at trial that plaintiff's interests under the two contracts were secondary to those of the contract sellers, the Johnsons and Hartmans.

The issue raised in this appeal is whether the two assignments constitute equitable mortgages requiring plaintiff to proceed with a mortgage foreclosure action and giving defendants redemptive rights upon a judgment of foreclosure.

Defendants contend the two assignments are equitable mortgages and that plaintiff was obligated to proceed with a mortgage foreclosure action as required by the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 15—101 et seq.). Further, defendants argue the trial court erred in ordering them to execute a quitclaim deed of the Hartman land without first according them the redemptive rights found in the Code. See Ill. Rev. Stat. 1985, ch. 110, par. 12—122 et seq.

Plaintiff's argument is somewhat difficult to follow. Without cit-

ing any authority, it insists the assignments are not mortgages. Plaintiff refers to *Lowman v. Lowman* (1886), 118 Ill. 582, for the proposition that one can give a deed in lieu of foreclosure, although the relevance of that case to the precise question at hand escapes us. Plaintiff likens itself to that of a contract seller, arguing that once a default occurs in an installment contract the customary practice is for the seller to bring an action to recover possession of the property. Having concluded that the assignments cannot be considered to be mortgages, plaintiff then proceeds in other portions of its brief to justify bringing a forcible entry and detainer action. It is enough to say that all of the cases on which plaintiff relies are clearly distinguishable from the situation presented here.

■ As to the character or nature of the two assignments in question, the rule is that "[e]very express executory agreement in writing by which contracting parties sufficiently indicate an intention to make a particular property therein described or identified a security for a debt, or by which instrument the party promises to convey or assign property as security, creates an equitable lien or mortgage on the property so described or indicated which is enforceable against such property." (27 Ill. L. & Prac. *Mortgages* sec. 22, at 109 (1956). See also R. Kratovil & R. Werner, Real Estate Law sec. 570, at 229 (7th ed. 1979) (hereinafter Real Estate Law) (stating the general rule as being that any written instrument by which the parties intend that real estate be held as security for the payment of a debt constitutes an equitable mortgage).) Express words are not necessary to create an equitable mortgage; the only requirement is that it clearly appear from the document that the parties intended that an identifiable parcel of property "be held, given or transferred as security" for the payment of a debt. (*Hibernian Banking Association v. Davis* (1920), 295 Ill. 537, 544.) See *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684; *Trustees of Zion Methodist Church v. Smith* (1948), 335 Ill. App. 233.

■ In this case when defendants entered into the installment contracts with the Johnsons and Hartmans, they acquired equitable title to the two parcels of property (*Shay v. Penrose* (1962), 25 Ill. 2d 447, 499-50; Real Estate Law sec. 332, at 121), interests which could properly be the subject of mortgages (27 Ill. L. & Prac. *Mortgages* sec. 12, at 102-03 (1956)). Defendants then assigned their equitable title to plaintiff as security for the two loans. The parties are in agreement that the assignments were in fact intended to serve as security for the loans. Given this fact, the assignments must be deemed to be equitable mortgages. Indeed, in *Chessen v. Morick* (1930), 260 Ill.

App. 1, a case with facts analogous to those presented here, it was held that the assignment of a purchaser's interest under a land sale contract which was intended to serve as security for a loan made by the assignee created an equitable mortgage on the purchaser's interest in the land. So too, the transactions in this case created equitable mortgages on defendants' interests in the Johnson and Hartman properties, thereby establishing a mortgagor/mortgagee relationship between the parties. Under the circumstances, plaintiff should have brought a mortgage foreclosure action, not an action for forcible entry and detainer. Accordingly, the judgment entered below on counts I and II must be reversed and the cause remanded for a new trial. Of course, since the assignments are mortgages, the parties on remand would be subject to the rights and obligations commonly attending such instruments. See *Beelman v. Beelman* (1984), 121 Ill. App. 3d 685, 692.

Having determined that the assignments are equitable mortgages, we address an issue which is likely to arise on remand, that being the effect of the provision in the assignment of defendants' interest in the Hartman contract requiring defendants to execute a quitclaim deed in lieu of foreclosure. We deem that the provision must be declared null and void.

▉▉ Inherent in every mortgage, including equitable mortgages, is an equitable right of redemption, sometimes referred to as the equity of redemption. (27 Ill. L. & Prac. *Mortgages* sec. 542, at 564-65 (1956); 55 Am. Jur. 2d *Mortgages* sec. 510 (1971).) The equitable right of redemption arises at the time of default and generally lasts until such time as there is a foreclosure sale, after which the mortgagor can only redeem his property under the redemptive rights provided by statute. In other words, once a foreclosure sale occurs, the equitable right of redemption ends. (Real Estate Law secs. 561, 566.) Needless to say the courts take a dim view of any attempt to limit or extinguish the mortgagor's equitable right of redemption. Although it is not impossible for a mortgagee to acquire the mortgagor's right of redemption (27 Ill. L. & Prac. *Mortgages* sec. 241, at 280 *et seq.* (1956)), a mortgagor may not do so pursuant to a provision contained in the mortgage itself, regardless of how explicit its language may be.

"Any provision in the mortgage purporting to terminate the mortgagor's ownership in the case of failure to make payments when due is against public policy and is void. *Once a mortgage, always a mortgage*. It cannot be converted into an outright deed by the mere default of the mortgagor. No matter how the mortgage seeks to disguise an attempted waiver of the equita-

ble right of redemption, the courts will strike it down." (Emphasis in original.) Real Estate Law sec. 562, at 226-27.

■■ Illinois courts have long adhered to the principle, referred to above, that a mortgage remains a mortgage until the right of redemption is barred by one of the modes recognized by law and have repeatedly stated that the parties cannot by an express stipulation in the mortgage transform the instrument into an outright conveyance upon default, which would operate to deprive the mortgagor of his redemptive rights. (*E.g., Williams v. Williston* (1924), 315 Ill. 178, 183 (statutory rights); *Jackson v. Lynch* (1889), 129 Ill. 72, 86; *Bearss v. Ford* (1883), 108 Ill. 16, 26.) See also 55 Am. Jur. 2d *Mortgages* sec. 514 (1971).

■■ In the case at bar, given that the assignments are equitable mortgages, the stipulation in the one assignment obligating defendants upon default to execute a quitclaim deed of their interest in the Hartman property effectively operates to destroy or cut off defendants' redemptive rights. In view of the above-cited authorities which establish a *per se* rule that such terms are invalid, we find that provision of the assignment to be null and void, even though the evidence indicates that the assignment was drafted by defendants' former attorney.

To the extent that plaintiff relies on *Lowman v. Lowman* (1886), 118 Ill. 582, as authority that a mortgagee can take a deed in lieu of foreclosure, that reliance is misplaced. In *Lowman* the court merely observed that a mortgagee may, if he so chooses, accept a conveyance from the mortgagor in order to avoid the expense of proceeding with a foreclosure action. That is a far different situation from the one presented here where the mortgage itself *required* the mortgagor to execute a deed upon the occurrence of a default.

For the reasons stated, the judgment entered in plaintiff's favor under counts I and II is reversed and the cause remanded for a new trial.

Reversed and remanded.

HOPF and SCHNAKE, JJ., concur.